ORIGINAL

AUSA: Jerry J. Fang

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

JOEL VASQUEZ,

Defendant.

**24 MAG 4164**

**COMPLAINT**

Violations of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1); 18 U.S.C. §§ 924(c)(1)(A)(i), 922(g)(1), and 2.

COUNTY OF OFFENSE:
BRONX

SOUTHERN DISTRICT OF NEW YORK, ss.:

GRIFFEN T. SHERIDAN, being duly sworn, deposes and says that he is a Detective with the Bergen County Prosecutor's Office and Task Force Officer with the Drug Enforcement Administration ("DEA"), and charges as follows:

**COUNT ONE**
**(Possession with Intent to Distribute Narcotics)**

1. On or about December 2, 2024, in the Southern District of New York and elsewhere, JOEL VASQUEZ, the defendant, knowingly and intentionally distributed and possessed with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and aided and abetted the same.

2. The controlled substance involved in the offense was 400 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 812, 841(a)(1), and 841(b)(1)(A);
Title 18, United States Code, Section 2.)

**COUNT TWO**
**(Possession with Intent to Distribute Narcotics)**

3. On or about December 2, 2024, in the Southern District of New York and elsewhere, JOEL VASQUEZ, the defendant, knowingly and intentionally distributed and possessed with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and aided and abetted the same.

4. The controlled substance involved in the offense was 100 grams and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Section 812, 841(a)(1), and 841(b)(1)(B);
Title 18, United States Code, Section 2.)

## COUNT THREE
### (Possession with Intent to Distribute Narcotics)

5. On or about December 2, 2024, in the Southern District of New York and elsewhere, JOEL VASQUEZ, the defendant, knowingly and intentionally distributed and possessed with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and aided and abetted the same.

6. The controlled substance involved in the offense was mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code, Section 812, 841(a)(1), and 841(b)(1)(C);
Title 18, United States Code, Section 2.)

## COUNT FOUR
### (Firearms Use, Carrying, and Possession)

7. On or about December 2, 2024, in the Southern District of New York and elsewhere, JOEL VASQUEZ, the defendant, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, the drug trafficking crimes charged in Counts One through Three, knowingly used and carried a firearm, and in furtherance of such crimes, possessed a firearm, and aided and abetted the use, carrying, and possession of a firearm.

(Title 18, United States Code, Section 924(c)(1)(A)(i) and 2.)

## COUNT FIVE
### (Possession of a Firearm Following a Felony Conviction)

8. On or about December 2, 2024, in the Southern District of New York and elsewhere, JOEL VASQUEZ, the defendant, knowing he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed a firearm, to wit, a black .380 caliber Bersa pistol, and aided and abetted the same, and the firearm was in and affecting commerce.

(Title 18, United States Code, Section 922(g)(1) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

9. I am currently a Detective with the Bergen County Prosecutor's Office and Task Force Officer with the DEA. I have been personally involved in the investigation of this matter. This Affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement officers and other

individuals. Because this Affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

    10. Based on my participation in this investigation, my discussions with other law enforcement officers, and my review of law enforcement records and other records, I have learned the following, in substance and in part:

    a. On or about November 2, 2024, I participated in law enforcement surveillance in the vicinity of 25 Bruckner Boulevard in the Bronx, New York. During the surveillance, law enforcement observed JOEL VASQUEZ, the defendant, exit an apartment building located at 25 Bruckner Boulevard carrying three black insulated delivery bags.

    b. Law enforcement officers then observed VASQUEZ enter a vehicle ("Vehicle-1") and followed Vehicle-1 as it drove to the vicinity of Sedgwick Avenue and Webb Avenue in the Bronx. After VASQUEZ exited Vehicle-1, law enforcement officers identified themselves, approached VASQUEZ, and asked to speak with VASQUEZ.

    c. VASQUEZ voluntarily agreed to speak with law enforcement officers and informed law enforcement officers, in substance and in part, that there were narcotics in the apartment unit at 25 Bruckner Boulevard (the "Apartment") from which he exited. VASQUEZ informed law enforcement that he lived alone in the Apartment and orally consented to a law enforcement search of the Apartment.

    2. Based on my participation in the search of the Apartment and my discussions with other law enforcement officers, I have learned the following, in substance and in part:

    a. During the search of the apartment, law enforcement officers found, among other things, a plastic bin in a closet in the living room that contained, among other things, (i) a safe containing a plastic bag containing a tan, brick-shaped object consistent in appearance with narcotics; and (ii) an oatmeal box containing a black .380 caliber pistol (the "Firearm") and a magazine loaded with several rounds of ammunition, both of which were wrapped in a blue towel. Photographs of the firearm and ammunition are depicted below left and the suspected narcotics are depicted below right:




b.      During the search, law enforcement officers also found (i) in the bedroom, a suitcase that contained multiple tan and white brick-shaped objects consistent in appearance with narcotics; and (ii) in the kitchen, additional bags containing a white, powdery substance consistent in appearance with narcotics, among other items (including another scale). Photographs of the suitcase are depicted below left and the items from the kitchen are depicted below right:




c.      In addition, law enforcement officers also recovered various paraphernalia used to prepare, weigh, and package narcotics, including packaging materials,

4

scales, kilo presses, respirators, and a stamp, among other things.[1] Photographs of certain of these items are set forth below:

*Respirators*

 

*Packaging Materials and Stamp*

 

---

[1] A "kilo press" is a colloquial term for a machine used by narcotics traffickers to package narcotics powder, such as cocaine, heroin, or fentanyl, into brick-shaped kilograms for distribution. Respirators are often used by narcotics traffickers to minimize potential exposure to narcotics during the packaging process. Stamps are often used by narcotics traffickers to brand smaller bags or "glassines" of narcotics with an identifying mark.

5

*Kilo Presses*

  

    d.  The suspected narcotics seized from the safe in the living room closet, the suitcase in the bedroom, and the bag in the kitchen were subsequently weighed and field tested, and determined to contain (i) approximately 9.93 kilograms of mixtures and substances that field tested positive for the presence of fentanyl; (ii) approximately 600 grams of mixtures and substances that field tested positive for the presence of heroin; and (iii) approximately 470 grams of mixtures and substances that field tested positive for the presence of cocaine.

    3.  Based on my participation in this investigation and my discussions with other law enforcement officers, I have learned the following, in substance and in part:

      a.  Based on communications I have had with a Special Agent from the Bureau of Alcohol, Tobacco, Firearms, and Explosives who is familiar with the manufacturing of firearms, and who examined the Firearm, I learned that the Firearm was not manufactured in the State of New York.

      b.  Based on my review of criminal history records pertaining to JOEL VASQUEZ, the defendant, which show, among other things, that VASQUEZ was previously convicted of a crime punishable by more than one year in prison. Specifically, VASQUEZ pled guilty in the U.S. District Court for the Southern District of New York to conspiracy to distribute narcotics, in violation of 21 U.S.C. § 846, which carries a maximum term of imprisonment of life, and on or about April 19, 2024, VASQUEZ was sentenced to a term of imprisonment of 180 months and a term of post-release supervision of 5 years.

WHEREFORE, I respectfully request that JOEL VASQUEZ, the defendant, be imprisoned or bailed, as the case may be.

_____
GRIFFEN T. SHERIDAN
Task Force Officer
Drug Enforcement Administration

Sworn to me through the transmission of this Complaint by reliable electronic means this 3rd day of December, 2024.

_____
THE HONORABLE HENRY J. RICARDO
United States Magistrate Judge
Southern District of New York

7